# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

---

Case No. 19-3581

---

JOHN GEORGE,

Appellant/Plaintiff,

vs.

YOUNGSTOWN STATE UNIVERSITY, JAMES TRESSEL,
MARTIN ABRAHAM, and GREG STURRUS,

Appellees/Defendants.

---

Appeal from the Order and Judgment of the U.S. District Court for the Northern
District of Ohio dated January 7, 2019, and from the Order dated May 31, 2019,
at 4:17-02322-BYP

---

## BRIEF OF APPELLANT JOHN GEORGE

---

LIEBER HAMMER HUBER & PAUL, P.C.

James B. Lieber
PA I.D. No. 21748
Thomas M. Huber
PA I.D. No. 83053
5528 Walnut Street
Pittsburgh, PA 15232
(412) 687-2231 (tel.)
(412) 687-3140 (fax)

Counsel for Appellant/Plaintiff

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 19-3581      Case Name: George v. Youngstown State Univ. et al.

Name of counsel: James B. Lieber, Thomas M. Huber

Pursuant to 6th Cir. R. 26.1, John George
                                                  *Name of Party*

makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> No.

### CERTIFICATE OF SERVICE

I certify that on _____ July 8, 2019 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/James B. Lieber

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

Case: 19-3581   Document: 17   Filed: 09/04/2019   Page: 2

# 6th Cir. R. 26.1
## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

(a) **Parties Required to Make Disclosure**.  With the exception of the United States government or agencies thereof or a state government or agencies or political subdivisions thereof, all parties and amici curiae to a civil or bankruptcy case, agency review proceeding, or original proceedings, and all corporate defendants in a criminal case shall file a corporate affiliate/financial interest disclosure statement.  A negative report is required except in the case of individual criminal defendants.

(b) **Financial Interest to Be Disclosed**.

(1)  Whenever a corporation that is a party to an appeal, or which appears as amicus curiae, is a subsidiary or affiliate of any publicly owned corporation not named in the appeal, counsel for the corporation that is a party or amicus shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the parent corporation or affiliate and the relationship between it and the corporation that is a party or amicus to the appeal.  A corporation shall be considered an affiliate of a publicly owned corporation for purposes of this rule if it controls, is controlled by, or is under common control with a publicly owned corporation.

(2) Whenever, by reason of insurance, a franchise agreement, or indemnity agreement, a publicly owned corporation or its affiliate, not a party to the appeal, nor an amicus, has a substantial financial interest in the outcome of litigation, counsel for the party or amicus whose interest is aligned with that of the publicly owned corporation or its affiliate shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the publicly owned corporation and the nature of its or its affiliate's substantial financial interest in the outcome of the litigation.

(c) **Form and Time of Disclosure**.  The disclosure statement shall be made on a form provided by the clerk and filed with the brief of a party or amicus or upon filing a motion, response, petition, or answer in this Court, whichever first occurs.

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Statement in Support of Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

I.      Statement of Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II.     Statement of Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

III.    Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

        A.      Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

                1.      George's Initial Federal Lawsuit and Settlement . . . . . . . . . . .  5

                2.      Retaliatory Animus Following Settlement and
                        Reinstatement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

                3.      George's Unexpected 2015 Termination . . . . . . . . . . . . . . . .  10

                4.      YSU Failed To Hire George As Director Of Dual
                        Enrollment & Student Support Services . . . . . . . . . . . . . . . . .  16

                5.      YSU Failed To Hire George As Assistant Director,
                        Research Services . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

                6.      YSU Failed To Hire George For A Position in the
                        School of Engineering Technology (Essentially
                        George's Prior Position) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

        B.      Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

IV.     Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30

V.      Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

        A.      Scope and Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

B.    George Established A Causal Connection Between His
       Protected Activity And His Termination. . . . . . . . . . . . . . . . . . . . . . 33

C.    George Established A Causal Connection Between His
       Protected Activity And YSU's Failure To Hire Him As
       Assistant Director of Research Services . . . . . . . . . . . . . . . . . . . . . . 47

D.    District Court Erroneously Required George To Satisfy The
       Pretext-Plus Standard For His Age Discrimination Claims . . . . . . . 51

E.    The Court Erred When It Dismissed George's Failure-To-Hire
       Retaliation Claims Which Arose During The Lawsuit . . . . . . . . . . . 56

VI.    Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

Certificate of Compliance (Word Count)

Certificate of Service

Addendum

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Adamov v. U.S. Nat'l Bank Nat'l Ass'n*, 726 F.3d 851 (6th Cir. 2013) . . . . . . . . . 56

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . 32

*Ballanger v. Bunge Foods*, No. 00-5120, 2000 U.S. App. LEXIS 33376
(6th Cir. Dec. 12, 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Barrett v. Whirlpool Corp.*, 556 F.3d 502 (6th Cir. 2009) . . . . . . . . . . . . . . . . . . 34

*Bryan v. United States*, 721 F.2d 572 (6th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . 57

*Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119
(2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Cutcher v. Kmart Corp.*, 364 Fed. Appx. 183 (6th Cir. 2010) . . . . . . . . . . . . . 46, 49

*Dixon v. Gonzales*, 481 F.3d 324 (6th Cir. 2007) . . . . . . . . . . . . . . . . 33, 37, 38, 48

*EEOC v. New Breed Logistics*, 783 F.3d 1057 (6th Cir. 2015) . . . . . . . . . . . . 34, 41

*Fed. Trade Comm'n v. E.M.A. Nationwide, Inc.*, 767 F.3d 611
(6th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Ford v. GMC*, 305 F.3d 545 (6th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Fort Bend Cty., Tex. v. Davis*, 139 S. Ct. 1843 (2019) . . . . . . . . . . . . . . . . . . 29, 56

*Goostree v. Tennessee*, 796 F.2d 854 (6th Cir. 1986). . . . . . . . . . . . . . . . . . . . 53, 55

*Hampton v. Caldera*, 58 Fed.Appx. 158 (6th Cir. 2003) . . . . . . . . . . . . . . . . . . . 56

*Hubbell v. FedEx SmartPost, Inc.*, Nos. 18-1373/1727,
2019 U.S. App. LEXIS 23300 (6th Cir. Aug. 5, 2019). . . . . . . . . . . . . . . . . . . 41, 45

*In re: Unimet Corp.*, 100 B.R. 881 (Bankr. N.D. Ohio 1988). . . . . . . . . . . . . . . . 7

*Lipschultz v. Holy Family Univ.*, NO. 15-5760, 2017 U.S. Dist. LEXIS 23476 (E.D. Pa. Feb. 17, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Lyons v. Sec'y of the U.S. Air Force*, No. 15-3011, 2016 U.S. App. LEXIS 23652 (6th Cir. Jul. 15, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

*Malin v. Hospira, Inc.*, 762 F.3d 552 (7th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . 50

*McFarland v. Henderson*, 307 F.3d 402 (6th Cir. 2002) . . . . . . . . . . . . . . . . . . . 56

*McGuire v. City of Springfield, Ill.*, 280 F.3d 794 (7th Cir. 2002) . . . . . . . . . . . 38

*Moore v. KUKA Welding Sys.*, 171 F.3d 1073 (6th Cir. 1999) . . . . . . . . 38, 39, 40

*Price v. Thompson*, 380 F.3d 209 (4th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 38

*Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599 (6th Cir. 2019). . . . 40, 41, 47

*Reeves v. Sanderson Plumbing Products, Inc.*, 120 S. Ct. 2097 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 51, 52, 54, 56

*Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749 (1995) . . . . . . . . . . . . . . . . . . . 57

*Rogers v. Henry Ford Health Sys.*, 897 F.3d 763 (6th Cir. 2018). . . . . . . . . . . . 33

*Ross v. Campbell Soup Co.*, 237 F.3d 701 (6th Cir. 2001) . . . . . . . . . . . . . . . . . . 52

*Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274 (6th Cir. 2012) . . . . . . . . . . . . 35

*Sharp v. Aker Plant Servs. Group*, 600 Fed. Appx. 337 (6th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38, 39, 41, 48, 49

*Snodgrass-King Pediatric Dental Assocs., P.C. v. Dentaquest USA Ins. Co.*, 79 F. Supp. 3d 753 (M.D. Tenn. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Summa v. Hofstra Univ.*, 708 F.3d 115 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . 36

*Templeton v. First Tenn. Bank, N.A.*, 424 F. App'x 249 (4th Cir. 2011) . . . . . . . 38

*United States v. Campbell*, 482 Fed.Appx. 997 (6th Cir. 2012) . . . . . . . . . . . . . . 57

*United States v. Marine Bancorporation, Inc.*, 418 U.S. 602 (1974) . . . . . . . . . 57

*Xin Liu v. Amway Corp.*, 347 F.3d 1125 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . 50

*Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634 (6th Cir. 2015) . . . . . 50

## **Statutes**

Age Discrimination in Employment Act, 29 U.S.C. §621, *et seq.* . . . . . . . . . . . . . 1

Fed R. Civ. Proc. 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*. . . . . . . . . . . 1

Title IX of the Education Amendments Act of 1972, 20 U.S.C.
§ 1681, *et seq.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1294(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

29 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 2000e. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## STATEMENT REQUESTING ORAL ARGUMENT

Pursuant to Sixth Circuit Local Rule 34(a), Appellant John George respectfully requests this Court to schedule oral argument. This case involves a factually complex record, including an earlier lawsuit between the parties that was litigated, settled, and arguably breached and other events spanning more than a decade. Neither of these cases involve normal employment discrimination claim situations usually seen by Courts. The decision-makers and comparators shifted over time. Because the facts are elusive, the District Court had to grant reconsideration on a small piece of the overall puzzle, but Appellant has reason to believe that it well could have provided broader relief as Appellant will seek to explain. Grasping the full scope of alleged retaliation means comprehending multiple technical jobs for which Appellant arguably was qualified but failed to receive fair consideration. This case is not frivolous and involves ongoing retaliation amounting to an apparent undeserved lifetime ban on employment in a public agency for protected conduct by a historically very good employee.

This appeal also includes an unusual issue in that the District Court dismissed George's retaliation claims that arose during the lawsuit for a failure to exhaust even though the parties agreed to waive administrative exhaustion. Waiver would have furthered the interests of finality and judicial economy.

# I.  STATEMENT OF JURISDICTION

On January 7, 2019, the U.S. District Court for the Northern District of Ohio (Judge Benita Pearson) granted summary judgment in its entirety dismissing Appellant John George's employment discrimination claims brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 *et seq.*  Opinion, RE 59, Page ID # 4822.  Jurisdiction was founded on 28 U.S.C. § 1331 and 42 U.S.C. § 2000e.

On January 29, 2019, George timely filed a Motion for Reconsideration requesting the Court to reconsider in part its grant of summary judgment.  Motion, RE 62, Page ID # 4840.  On May 31, 2019, despite granting in part George's motion for reconsideration, the Court nevertheless upheld its summary judgment order and dismissed George's claims.  Reconsideration Order, RE 65, Page ID #4881.  George filed a Notice of Appeal on June 21, 2019.  Notice of Appeal, RE 66, Page ID #4890.

This appeal is from a final order that disposes of all parties' claims. Jurisdiction of this Court over final orders rests on 29 U.S.C. § 1291.  Per 28 U.S.C. § 1294(1), this Court has jurisdiction over appeals from decisions of the U.S. District Court for the Northern District of Ohio.

## II.  STATEMENT OF ISSUES

1.      Whether a Title VII plaintiff establishes a retaliatory causal link between his prior discrimination lawsuit and his termination where he was fired two weeks after his employer satisfied its obligations to him under a settlement agreement, following reinstatement he was treated less favorably than similarly situated employees, and there is ample evidence of pretext which the Court failed to consider, including that the decision-maker falsely blamed others for the termination and his asserted justification that plaintiff's position had to be eliminated because of the return of another employee was discredited?

Suggested Answer: Yes.

2.      Whether a Title VII plaintiff establishes a causal connection between his EEOC charge and a failure to hire where a nine month gap was the first opportunity the employer had to retaliate against him, there was other indicia of retaliatory conduct, and plaintiff presented sufficient evidence to call into question the employer's subjective asserted justification for the decision, including that the successful hire had been preselected?

Suggested Answer: Yes.

3.      Whether the Court erred when it granted summary judgment because George allegedly did not provide additional evidence of discrimination at the pretext

stage (pretext plus) where he established a prima facie case of age discrimination, showed that the successful hire was preselected, and discredited the employer's asserted justification?

Suggested Answer: Yes.

4.    Whether the District Court erred when it dismissed George's failure to hire retaliation claims which arose during the lawsuit based on a failure to exhaust administrative remedies where the Parties had agreed to waive administrative exhaustion as permitted by Sixth Circuit precedent?

Suggested Answer: Yes.

### III.  STATEMENT OF THE CASE

George brought this action alleging that his former employer Youngstown State University ("YSU") (1) terminated him as an Assistant Professor of Engineering Technology in retaliation for filing and settling a federal lawsuit in violation of Title VII, and (2) failed to hire him into several positions for which he was qualified because of his age in violation of the ADEA, his gender in violation of Title IX, or in retaliation for protected activity in violation of federal anti-discrimination statutes. Amended Complaint, RE 19, Page ID # 146-170.

### A.    Statement of Facts.

George is a proud alumnus of YSU where he earned two undergraduate degrees[1] and two graduate degrees.[2]  George Declaration, RE 50-1, Page ID # 4597, 4608.  George is licensed as both a Professional Engineer and a Teacher (Math and Physics grades 7-12).  *Id.*, Page ID # 4597, 4599.  Following a 20 year industrial career involving design and manufacturing in the thermal fluid field, George returned

---

[1]Bachelor of Science in Mathematics with a minor in Physics (1972) and Bachelor of Engineering in Mechanical Engineering (1974).  George Declaration, RE 50-1, Page ID # 4597.

[2]Doctor of Education (Ed.D.) (2013) (Dissertation entitled "Preparing Math Deficient University Students for STEM Achievement and Sustainable Learning") and Master of Science in Education with a content area in Mathematics (1978). George Declaration, RE 50-1, Page ID # 4597, 4608.

4

to YSU in 1999 initially as an instructor and then as a tenure track Assistant Professor of Mechanical Engineering Technology in the School of Engineering Technology. *Id.*, Page ID # 4598-99.

### 1.    George's Initial Federal Lawsuit and Settlement.

In 2005, George applied for tenure and promotion.  George Declaration, RE 50-1, Page ID # 4598-4599.  Both his then Department Chair, William Wood, and the tenured faculty in the Department recommended him for tenure and promotion. George Declaration, RE 50-1, Page ID # 4598-4599.  However, Dr. Cynthia Hirtzel ("Hirtzel"), the Dean of the College, adamantly opposed his application.  George Deposition at 87, RE 49-3, Page ID # 4298; George Declaration, RE 50-1, Page ID # 4599.  In a case of reverse discrimination, Hirtzel sought to install an African-American recent graduate into George's tenure track position.[3]  George Declaration, RE 50-1, Page ID # 4600-01.  George's position was one of several on campus earmarked to be filled by a minority.  *Id.*

Relying on Hirtzel's negative recommendation, then YSU President David Sweet denied George's tenure application on November 18, 2005.  George Declaration, RE 50-1, Page ID # 4600.  An eminent three-person Tenure Appeal

---

[3]This individual was George's undergraduate student and friend, but did not have the required graduate training and lacked George's teaching experience. George Declaration, RE 50-1, Page ID # 4600-1.

Committee ("TAC") was formed and unanimously recommended that George be awarded tenure. *Id.*; George Deposition at 89-92, RE 49-3, Page ID # 4299. President Sweet nevertheless rejected the TAC's recommendation and upheld the tenure denial on March 9, 2006. George Declaration, RE 50-1, Page ID # 4600.

As a YSU faculty member, George has been inclusive and supportive of education for poor, disadvantaged, and minority students. George Declaration, RE 50-1, Page ID # 4601, 4603. He had no choice but to challenge improper discrimination that cost him his job. *Id.* In April 2006, George filed an EEOC charge. Exhibit 2, RE 48-1, Page ID # 3673. On December 13, 2006, George filed a federal lawsuit (No. 4:06-CV-2980) against YSU and Hirtzel alleging illegal discrimination under Title VII. Exhibit 3, RE 48-2, Page ID # 3674-3684.

Effective January 1, 2007, Hirtzel, whose personal behavior was highly erratic and involved substance abuse, was demoted and she was replaced as the Dean of the College of Engineering and Technology, which later was reorganized as the College of STEM, by Defendant Martin Abraham. George Declaration, RE 50-1, Page ID # 4601; Abraham Deposition at 47, RE 49-1, Page ID # 4161. Hirtzel now reported directly to Abraham and they enjoyed a friendly and cordial relationship. Abraham Deposition at 163-7, RE 49-1, Page ID # 4190-4191. In fact, Abraham had been Hirtzel's student during his undergraduate studies. *Id.*

6

In February 2008, the Parties settled the federal lawsuit.  *See* Exhibit 4, RE 48-3, Page ID No. # 3685-3692.  Under the Settlement Agreement, YSU paid George $30,000 and reinstated him as an Assistant Professor albeit on a Term Contract (without tenure on a year-to-year basis).  *Id.*  YSU also agreed that for a period of four years (2008-09 to 2011-12) George could not be fired absent "just cause." George Declaration, RE 50-1, Page ID # 4597.  Critically, if any time after that four-year period George were to be terminated, YSU agreed to provide him group medical insurance benefits[4] until he "becomes eligible for Medicare" upon reaching age 65 in April 2015.  George Declaration, RE 50-1, Page ID # 4597-8; George Deposition at 312, RE 49-3, Page ID # 4354.  Thus, YSU's obligations to George under the Settlement Agreement extended out to April 5, 2015.  *Id.*

### 2.    Retaliatory Animus Following Settlement and Reinstatement.

George performed extremely well and received uniformly positive annual evaluations.[5]  Among George's accomplishments, he overhauled and improved an

---

[4]Health insurance constitutes employee compensation.  *See e.g. In re: Unimet Corp.*, 100 B.R. 881, 883 (Bankr. N.D. Ohio 1988).

[5]*See* Exhibit 7 (2012 Evaluation), RE 48-4, Page ID # 3693-3704 ("John continues to be a valuable asset to our programs. His passion for teaching, and for using the success performance of his students as a metric of the success of the methods, is refreshing"); Exhibit 8 (2013 Evaluation), RE 48-5, Page ID # 3705-3715 ("George has done an excellent job in enhancing our developmental course work.  His work in ENTC 1500, leading to a dissertation for his Ed.D., is

introductory course called "ENTC 1500" that (as his dissertation later showed) dramatically increased both student achievement and retention in the Department of Engineering Technology.  George Declaration, RE 50-1, Page ID # 4609-10.  As Abraham (the decision-maker who terminated George) later admitted, George's performance "has always been quite good."  Abraham Deposition at 180-81, 256, RE 49-1, Page ID # 4194-4195.

Following the lawsuit and settlement, George was not welcomed back by YSU. George Declaration, RE 50-1, Page ID # 4607.  For example, two of his Department colleagues – then Assistant Professors Brian Vuksanovich and Michael Costarell – complained to the Department Chair that they were "disturbed" and "concerned" by George's reinstatement.  George Deposition at 21, 47, RE 49-3, Page ID # 4282, 4288.  Abraham was aware of the "displeasure amongst some of the faculty" about George's return.  Abraham Deposition at 52, 54-5, RE 49-1, Page ID # 4162-3.

During the 2013-2014 academic year, Michael Costarell was on sabbatical yet despite a strong need for covering thermal fluid coursework, George was denied the opportunity to teach such coursework even though it clearly fell within his field of expertise.  George Declaration, ECF Doc. 50-1, Page ID # 4611-4612.  He also was

_____

commendable"); Exhibit 9 (2014 Evaluation), RE 48-6, Page ID #3716-3730 ("John has shown great interest and been actively engaged in developing content for under prepared students, and has been effective in promoting their success.").

denied the opportunity to teach a fluid mechanics class outside of his Department despite a specific request from that Department's Chair. *Id.* George became the only full-time faculty member in his Department who was denied membership on search committees despite asking to be on those committees. George Deposition at 99, RE 49-3, Page ID # 4301. He was excluded from participating in the Department's accreditation process in which he previously had participated. *Id.* Further, he was excluded from serving on Industrial Advisory Committees despite his 20 years of industrial experience. *Id.*

During the renewal years of 2012-2013, 2013-2014, and 2014-2015, George had a positive relationship with YSU's then Executive Administrative team who renewed his annual contracts, including then President Cynthia Anderson and then Provost Ikram Khawaja. George Deposition at 52, 99, 100-101, RE 49-3, Page ID # 4289, 4301-4302. In October 2014, after George's 2014 renewal, YSU's Administrative team changed to include Provost Abraham, General Counsel Holly Jacobs, Esq., and President James Tressel. George Deposition at 50, RE 49-3, Page ID # 4289. In contrast to the prior Administration, this Administrative team was not supportive of George. George Deposition at 101, RE 49-3, Page ID # 4302.

9

3.    **George's Unexpected 2015 Termination.**

In early April 2015, George turned 65 and became eligible for Medicare. George Deposition at 312, RE 49-3, Page ID # 4354.  This date marked the end of YSU's obligations under the Settlement Agreement.  *Id.*; Exhibit 4 at ¶ 5, RE 48-3, Page ID # 3687.  Abraham (Hirtzel's friend and former student) terminated George just two weeks later on April 20, 2015.  Lamb Deposition at 53, RE 49-5, Page ID # 4424.  According to George:

> I was sitting at my office desk and Carol [Lamb] came into the office, and she looked really somewhat distressed, and she said that, "Gregg Sturrus said I should talk with you; he felt that ... you should know." And she made some kind of a comment of sort of like the poor guy should know that you're not being extended, that your contract will not be renewed for next year.  I mean, she seemed really sad about it.  ....  It took me awhile to take it all in.  ....  I was just in semi-shock and trying to figure out what precisely was going on.  Because I really didn't expect it.  I expected to be treated well based on my performance.  All of my evaluations were excellent at YSU.  ....  [Lamb] did make some statement that it was ... a Martin Abraham decision.

George Deposition at 148-9, RE 49-3, Page ID # 4313-14.

It is undisputed that Abraham was aware of George's prior lawsuit and administered the Settlement Agreement.  Abraham Deposition at 209-10, RE 49-1, Page ID # 4202.  Shortly before the April 20th termination, Abraham said to interim Dean Sturrus that YSU now had fulfilled its obligations to George under the Settlement Agreement.  George Deposition at 40, RE 49-3, Page ID # 4286; Sturrus

10

Deposition at 11, RE 49-8, Page ID # 4476.  Abraham warned Sturrus that there

would be a loss of "Term" positions (the one held by George),  and "that whatever

years of reinstatement there were [for George under the Settlement Agreement],

[we're] finished."  Sturrus Deposition at 22-23, RE 49-8, Page ID # 4479.

Despite the fact that Department Chair Lamb told George his termination was

a "Martin Abraham decision," Abraham shifted blame for the decision to others.

First, Abraham swore in his May 6, 2016 EEOC affidavit that he and Sturrus jointly

"determined that the School of Engineering Technology could not sustain Dr.

George's position and salary in light of budgetary concerns."  Exhibit 34 at ¶ 11, RE

48-13, Page ID # 3787; Abraham Deposition at 217, RE 49-1, Page ID # 4204.

However, Sturrus denied that allegation.  He testified that he actually recommended

George for renewal and that Abraham alone decided to terminate George.  Sturrus

Deposition at 30-31, 35, 56, 95, RE 49-8, Page ID # 4481-2, 4487, 4497.  Abraham

flip-flopped from his earlier sworn affidavit conceding at his deposition that Sturrus

was not involved in the termination decision that he alone made.   Abraham

Deposition at 217-18, RE 49-1, Page ID # 4204.

Next, Abraham claimed that Department Chair Lamb was the one who decided

to eliminate George's position.  Abraham Deposition at 69, 97, RE 49-1, Page ID #

4167, 4174.  According to Abraham, "Carol [Lamb] made the determination, when

11

we eliminated a position, that it was that position [George's] that would be eliminated." *Id*. Like Sturrus, Lamb denied this allegation. Lamb Deposition at 53, 58-61, RE 49-5, Page ID # 4424-4426. She testified to the contrary that Abraham never consulted her about the termination decision. *Id.* In fact, she clarified that she recommended George for renewal and learned of George's termination only after-the-fact. *See* Lamb Deposition at 29, 42, 48, 53, 58-59, 61, RE 49-5, Page ID # 4418, 4421-4422, 4424-4426.

Abraham claimed that he had to terminate George because of the return of Vuksanovich, a faculty member who had been on a three year leave. Abraham Deposition at 85-86, RE 49-1, Page ID # 4171. According to Abraham, George replaced Vuksanovich during the leave and it only made sense to bump George upon Vuksanovich's return. Abraham Deposition at 195, RE 49-1, Page ID # 4981. This assertion is false.

The evidence shows that a Term faculty member named Ron Griswold (and not George) replaced Vuksanovich and taught his courses in both 2012-13 and 2013-2014. *See* Exhibit 107 at 9 of 11, RE 48-31, Page ID # 4087  (2013 – "Ron has made significant contributions to the MET program filling in for Brian Vuksanovich who is on unpaid leave."); (2014 – "Ron has been an asset to the mechanical engineering technology program filling in for Brian Vuksanovich who is on unpaid leave.").  At

12

the time, Abraham himself acknowledged that Griswold "had filled in admirably" for Vuksanovich.  Exhibit 107 at  p. 11 of 11, RE 48-31, Page ID # 4089.

In 2014-2015, some of Vuksanovich's courses were covered by a Term faculty member similarly situated to George named Daryl Gross.  Exhibit 76 at 6, RE 48-24, Page ID # 4020; Lamb Deposition at 66, RE 49-5, Page ID # 4427.  Both Gross and Vuksanovich teach in the same area – Design and Manufacturing.  Abraham Deposition at 142, RE 49-1, Page ID # 4185.  In contrast, George's area is in Thermal Fluids and from 2008 on George taught primarily introductory courses entitled "ENTC 1500," "ENTC 1505," and "STEM 1513," and not any of Vuksanovich's or Gross's courses.  George Declaration, RE 50-1, Page ID # 4607-8.  Shortly before George's termination, Gross confided in George that if Vuksanovich were to return, "he (Gross) was really concerned about his position."  George Deposition at 69, RE 49-3, Page ID # 4285.  At the time, George had no reason to suspect he would not be renewed.  George Declaration, RE 50-1, Page ID # 4616; George Deposition at 131-32, RE 49-3, Page ID # 4309.  Upon Vuksanovich's return, Abraham renewed Gross (who never sued YSU and was concerned about his position)[6] while he

_____

[6]Gross retired just two years later at the end of academic year 2016-17. Exhibit 76 at 7, RE 48-24, Page ID # 4021.  YSU did not fill his vacant position; instead, it created a new position within the Department in a different subject area. Lamb Deposition at 13, 69, RE 49-5, 4414, 4428; Exhibit 76 at 10, RE 48-24, Page ID # 4024.

terminated George (the only one who sued YSU and was not concerned about his position).  Abraham Deposition at 88-89, 136, RE 49-1, Page ID # 4171-4172, 4183; George Deposition at 165, RE 49-3, Page ID # 4318.

YSU's claim that George was terminated because of budgetary concerns is contradicted by the evidence.  Since 2012, YSU employed 5 Term faculty members in the Department: George, Griswold, Gross, Daniel Coyne, and Joseph Sanson.  Exhibit 76 at 7, RE 48-24, Page ID # 4021; Lamb Deposition at 12-14, RE 49-5, Page ID # 4414; George Deposition at 102, RE 49-3, Page ID # 4302.  George was the only one who was recommended for renewal but then was terminated.  *See id.*; Sturrus Deposition at 56, 59, RE 49-8, Page ID # 4487-4488; Abraham Deposition at 89, 147, RE 49-1, Page ID # 4172, 4186.  In April 2015, Abraham renewed Term faculty members Gross and Coyne but terminated George.  *See* Exhibit 76 at 7, 10, RE 48-24, Page ID # 4021, 4024; Abraham Deposition at 186-89, RE 49-1, Page ID # 4196.  Abraham also hired two new tenure-track faculty in the Department – Joseph Sanson (age 45) and Jason Zapka (age 40).  *See* Exhibit 76 at 7, 10, RE 48-24, Page ID # 4021, 4024; Abraham Deposition at 186-89, RE 49-1, Page ID # 4196-7.

In 2015, STEM College had "stable enrollment" and continued to hire new faculty members.  Sturrus Deposition at 46, RE 49-8, Page ID # 4485: Lamb at 35, 57, RE 49-5, Page ID # 4419, 4424; George Declaration ¶ 78-80, RE 50-1, Page ID

# 4609.  The enrollment within the Engineering Technology Department was stable.

Lamb Dep. at 35, RE 49-5, Page ID # 4419.  Sturrus never was asked to identify

possible budget savings, such as not filling vacant positions.  Sturrus Deposition at

37, RE 49-5, Page ID # 4420.  In 2015, there were 15 retirements in the STEM

College [reflecting a savings of $1.5 million] which was a high number because YSU

had "a lot of old faculty."  Sturrus Deposition at 46, RE 49-8, Page ID # 4485;

Abraham Deposition at 108, RE 49-1, Page ID # 4176.  Sturrus sent Abraham six

Term renewal recommendations (including George); Abraham renewed every one

except George.  Sturrus Deposition at 70, RE 49-8, Page ID # 4491.

YSU asserts that Abraham did not renew four other older Term faculty at the

same time as George: Robert Larkin (age 65), Audrey Ellenwood (age 64), Thomas

Pittman (age 57), and Susheel Kowalker (age 42).  Exhibit 95 at 10, RE 48-26, Page

ID # 4061.  But none of these individuals was subjected to non-renewal as alleged.

Discovery showed that (1) Larkin resigned, (Exhibit 108, RE 48-32, Page ID # 4101-

4012) (2) Ellenwood likewise resigned (Exhibit 109, RE 48-33, Page ID # 4013); (3)

Pittman violated YSU's discrimination/harassment policy causing separation (Exhibit

112 at 6, RE 48-36, Page ID # 4144) and; (4) Kowalker left due to visa issues.  *See*

Exhibit 110 at 11, Page ID # 4114; Sturrus Deposition at 64-5, RE 49-8, Page ID #

4489.  Their separations from employment do not support YSU's position.

15

**4.    YSU Failed To Hire George As Director Of Dual Enrollment & Student Support Services.**

Following termination, George applied in July 2015 for the position of YSU Director of Dual Enrollment & Student Support Services.  See Exhibit 61, p. 0060, RE 48-17, Page ID # 48-17 ; Exhibit 62, p. 070, 076, RE 48-18, Page ID # 3861, 3867.  He was 65 at the time.  YSU failed to hire him for that position.  *Id.*  Members of the search committee were faculty members of the Math Department: Lori Carlson, Richard Goldthwait and Thomas Wakefield (Search Chair).  George Deposition at 201, RE 49-3, Page ID # 4327.  Instead, YSU hired Julie Seitz, a female in her forties. George Deposition at 197, 201, RE 49-3, Page ID # 4326-4327; Goldthwait Deposition at 25-26, 40-42, 88, RE 49-4, Page ID # 4370, 4373-4374, 4385.

Discovery showed that Seitz had been pre-selected for the position by Math Department Chair Angela Spalsbury.  George Deposition at 197, 201, RE 49-3, Page ID # 4326-4327; Goldthwait Deposition at 25-26, 40-42, 88; RE 49-4, Page ID # 4370, 4373-4374, 4385.  For example, when it was discovered that Seitz (the only candidate selected for an interview) (Exhibit 63, p. 0313, RE 48-19, Page ID # 3878; Carlson Deposition at 84, RE 49-2, Page ID # 4249) did not meet the minimum requirements of the position, YSU through Spalsbury immediately terminated the search, revised the job posting to require a Master's in Math "by August 31, 2015"

16

to suit Seitz's graduation date if she passed her remaining exams, and reposted the position. *Compare* Exhibit 61, 0060, RE 48-17, Page ID # 3847 (initial) ("Master's degree in mathematics"), *with* Exhibit 63, p. 00309, RE 48-19, Page ID # 3874 (revised) ("Master's degree in mathematics to be received by August 31, 2015"), 00310, *Id.* at Page ID # 3875; Exhibit 61, p. 0077, RE 48-17, Page ID # 3856; Exhibit 64, p. YSU 6161, RE 48-20, Page ID # 3914 ("candidate chosen [Seitz] does not currently have req[uired] Masters and posting does not state in progress").

When Committee member Goldthwait asked Spalsbury to consider relaxing the requirements as it did for Seitz so the Committee also could evaluate George's application, Spalsbury refused. Goldthwait Deposition at 17, 19-20, 46-7, 79, RE 49-4, Page ID # 4368, 4375, 4381. Search Chair Wakefield claimed that George was not qualified because he did not have a Bachelor's degree in mathematics education. Exhibit 63, p. 00313, RE 48-19, Page ID # 3878. However, Goldthwait testified that George's combination of a B.S. in Mathematics with a teaching certificate is "more than equivalent" to a Bachelor's degree in mathematics education. Goldthwait Deposition at 51, 122, RE 49-4, Page ID # 4376, 4394.[7] The math content area in George's M.S. in Education combined with his Doctoral concentration in Research

---

[7]Equivalencies often are used in searches at YSU. Shields Declaration, RE 50-2, Page ID # 4639-4642; George Declaration, ¶ 53-55, RE 50-1, Page ID # 4604.

(statistical) coursework and dissertation is equivalent to the coursework and thesis requirements for a Master's in Math & Statistics; therefore, George met the minimum requirements of the position. George Declaration ¶ 183, RE 50-1, Page ID # 4631. Carlson acting as Search Chair for a later posted position (Lecturer, Math and Statistics) actually looked at equivalencies of George at the Master's level. Carlson Deposition at 175-6, RE 49-2, Page ID # 4272. However, the committee members discussed George's prior lawsuit against YSU. Carlson Deposition at 177-81, RE 49-2, Page ID # 4273-4. Carlson admitted during her deposition that a hiring manager would be biased against anyone who would engage in such protected activity. Carlson Deposition at 184, RE 49-2, Page ID # 4274.

The Director position required extensive interaction with high school math teachers. Carlson Deposition at 129-30, RE 49-2, Page ID # 4261. George qualified based on his Doctorate, Master's with math content, and high school teaching certification. George Declaration ¶ 185, RE 50-1, Page ID # 4631-2. As a result of the rigidity applied to George in comparison to Seitz, he was never actually considered for the position despite his qualifications. Goldthwait Deposition at 35-36, RE 49-4, Page ID # 4397. Following the search, Goldthwait expressed to George skepticism about the search process, and another Math Department faculty member, Annette Burden, verified to George that the hiring was "pre-determined."

18

George Deposition at 198, RE 43-9, Page ID # 4326.

On August 29, 2018, Goldthwait told fellow Search Committee member Carlson he was being deposed in this litigation. Goldthwait Deposition at 21-26, 94, RE 49-4, Page ID # 4369-4370, 4387. She told him to deny that he ever had told George that Seitz was the pre-selected hire. *Id.* Carlson told Goldthwait to falsely construct his testimony: "Lori told me that . . . if I'm asked . . . did I tell John [George] that Julie [Seitz] was pre selected, that I should say no, that I did not say that. She told me that that's what I should say." Goldthwait Deposition at 27, RE 49-4, Page ID # 4370. Carlson, who tried to mold Goldthwait's testimony to favor YSU to the detriment of George, also admitted there in fact was "some degree of bias, pre-selection" in favor of Seitz. Goldthwait Deposition at 25-26, RE 49-4, Page ID # 4370; Carlson Deposition at 45, 96, RE 49-2, Page ID # 4240, 4252.

## 5.  YSU Failed To Hire George As Assistant Director, Research Services.

In October 2015, George properly filed for private arbitration with YSU based on his Settlement Agreement alleging age discrimination (failure-to-hire) and retaliation (termination), but YSU objected necessitating this litigation. Exhibit 27, RE 48-9, Page ID # 3741-52; George Declaration, RE 50-1, Page ID # 4620. In January 2016, George filed claims for age discrimination and retaliation with the EEOC. Exhibit 30, RE 48-10, Page ID # 3753-3761.

19

During the pendency of the EEOC charge in which George accused Abraham of terminating him in violation of Title VII, George applied in November 2016 for the position of Assistant Director, Research Services, in YSU's Research Office. *See* Exhibit 72, RE 48-22, Page ID # 3953-3983. The Research Office was managed by Michael Hripko (Associate Vice President for Research) who reported directly to Abraham and with whom he is "very close." George Deposition at 308, RE 49-3, Page ID # 4353; Abraham Deposition at 250, RE 49-1, Page ID # 4212. It is undisputed that George was qualified for this position and, in fact, was invited to interview for it. George Declaration, RE 50-1, Page ID # 4634.

During the search process, Hripko informed Abraham that George was up for consideration and scheduled for an interview. Abraham Deposition at 249, RE 49-1, Page ID # 4212. Abraham ultimately would have to approve George's hire. Abraham Deposition at 250, RE 49-1, Page ID # 4212. In a highly irregular move, Hripko (the hiring manager who was not supposed to be involved in the Search Committee) actually replaced the Search Chair, Andrew Shepard Smith, and sat in on George's interview but no one else's. George Declaration ¶ 188, RE 50-1, Page ID # 4632; George Deposition at 251, RE 43-3, Page ID # 4339. Not surprisingly, George did not get the position. *Id.* George asserts that YSU failed to hire him in retaliation for filing the EEOC charge. Amended Complaint, RE 19, Page ID # 163-4.

20

George also asserts that YSU failed to hire him because of his age.  Amended Complaint, RE 19, Page ID # 167.  YSU ultimately hired 34 year old Ashley Riggleman for the position.  *See* Exhibit 72, p. YSU7215, RE 48-22, Page ID # 3966; George Declaration ¶ 191, RE 50-1, Page ID # 4632.  YSU asserts, *inter alia*, that the 34 year old Riggleman had more experience than the 65 year old George.  Hripko Declaration, RE 45-2, Page ID # 3614.  Internal forms required YSU to identify Riggleman's greater experience.  Exhibit 72 at YSU7207, RE 48-22, Page ID # 3958.  However, YSU failed to identify Riggleman's alleged greater experience only in comparison to George's candidacy, which is highly suspect.  *Id.*

In addition, Riggleman was living in Utah (Exhibit 72, p. 7213, RE 48-22, Page ID # 3964) when she met Hripko and expressed interest in returning to Ohio.  George Declaration at ¶ 203, RE 50-1, Page ID # 4635.  After Hripko wrote the posting, Riggleman was the first person to apply (within 24 hours) suggesting an inside track.  Exhibit 72, YSU 7213 (11/1/16), RE 48-22, Page ID #3964.  Prior to George's interview, Hripko already had ordered software (MODERAS) familiar to Riggleman.  George Deposition at 249-50, RE 49-3, Page ID # 4339; Exhibit 72, p. YSU 7219, RE 48-22, Page ID # 3970.  George readily could have mastered MODERAS.  *Id.* Regardless, MODERAS was not part of the search qualifications, never was implemented, and the company has gone bankrupt.  George Declaration at ¶ 204, RE

21

50-1, Page ID # 4635.

### 6. YSU Failed To Hire George For A Position in the School of Engineering Technology (Essentially George's Prior Position).

On November 9, 2017, YSU posted a vacancy for "Lecturer, School of Technology – First Year Engineering Technology." Exhibit 73, pp. 1-2, RE 48-23, Page ID # 3984-5. It is quite similar to George's "old position," as Abraham admitted to STEM College Dean Wim Steelant. George Deposition at 140-141, 180, RE 49-3, Page ID # 4311-2, 4321; Steelant Dep. at 10, 24, 34, RE 49-7, Page ID # 4454, 4457, 4460. The "First Year Engineering Technology courses" in the posting included ENTC 1500 previously developed and taught by George. George Declaration at ¶ 135, RE 50-1, Page ID # 4621. Jason Zapka, Chair of the Search Committee, knew that George had taught "some of" the classes listed in the posting. Zapka Deposition at 52, RE 49-10, Page ID # 4545.

Chair Lamb initiated the posting because since George's termination the first year program lacked consistency as courses were being taught by "a variety of different people." Zapka Deposition at 38-39, 83, RE 49-10, Page ID # 4542, 4553; Exhibit 76, p. 8-9, RE 48-24, Page ID # 4022-3. The position went through rigorous review and approval by the Dean, Provost, and President Tressel. Abraham Deposition at 251-52, RE 49-1, Page ID # 4212; Steelant Deposition at 10, 21-23, 59,

RE 49-7, Page ID # 4454, 4457, 4466.

George filed this lawsuit naming Abraham as a Defendant on November 6, 2017.  Complaint, RE 1, Page ID # 1.  Abraham became aware of it on or about November 15, 2017.  Abraham Deposition at 245-46, 254-55, RE 49-1, Page ID # 4211, 4213.  George applied for the Lecturer position on November 15, 2017. Exhibit 73, George 000174, RE 48-23, Page ID #3993; Zapka Deposition at 49, RE 49-10, Page ID #4545.  YSU admits that George was qualified for this position. Abraham Deposition at 252, RE 49-1, Page ID # 4212; Zapka Deposition at 69, RE 49-1, Page ID # 4550; Lamb Deposition at 90, 113, RE 49-5, Page ID # 4433.

In December 2017, Abraham clearly put the Lecturer search on hold and contacted YSU's legal department because George had applied.  Abraham Deposition at 258, 268, 273, RE 49-1, Page ID # 4214, 4216, 4218.  Abraham even admitted that he "needed to get further advice and further discussion since there was a pending lawsuit that involved [George]," which discussion he had with General Counsel Jacobs.  Abraham Deposition at 269-70, RE 49-1, Page ID # 4217.  On January 23, 2018, Abraham told Steelant that the Lecturer search was on hold because George had applied and he was reviewing the matter with legal.  Steelant Deposition at 34, RE 49-7, Page ID # 4460.

23

According to Steelant: "The Provost said that there might be an issue because a person by the name of John George applied to this position. And the issue that he referred to was, and that's the only thing he told me, was that John George ... had a similar position and didn't get renewed at one point.…" Steelant Deposition at 34, 55, RE 49-7, Page ID # 4460, 4465. On February 6, 2018, Steelant stated in an internal memo: "The School of Technology was approved for a lecturer position. However, **the issue came about with John George**." Exhibit 37, YSU 16753, RE 48-14, Page ID # 3790 (emphasis added).

In this lawsuit, Abraham now says he put a hold on the Lecturer position as the result of an accrediting body (Accreditation Board for Engineering and Technology, Inc. or "ABET") report that YSU needed to support a new lab technician position. Abraham Deposition at 268, RE 49-1, Page ID # 4216. This rationale is highly suspect. The ABET report merely raised a *future* concern that the Department should provide assistance to faculty in setting up labs. *See* Exhibit 111, p. 2, 11 , RE 48-35, Page ID # 4115, 4125 (draft ABET report, noting lack of technician support a future "concern"); Zapka Deposition at 29-30, 34, 78, RE 49-10, Page ID # 4540-1, 4552. Zapka testified that the ABET site visit went very well and the Department received the *full six year accreditation* without a lab technician. Zapka Deposition at 25-27, RE 49-10, Page ID # 4539. At no point did ABET require YSU to hire a lab

24

coordinator.  Zapka Deposition at 29-30, 34, 78, RE 49-40, Page ID # 4540-1, 4552.

No steps have been taken since the ABET accreditation to hire a lab coordinator

including no job posting and no search committee.  Zapka Deposition at 33-35, RE

49-10, Page ID # 4541.

On January 23, 2018, Steelant recommended to Abraham in response to what

had become known internally among the leadership as the "John George issue" that

they "repost [the Lecturer position] in August September as a tenure track position

with hire Fall 2019."  Exhibit 37, YSU 16753, RE 48-14, Page ID # 3790.  Steelant

then relayed to Lamb that "somebody applied to it that held the position and . . . is

now applying again to it," which referred to George.  Steelant Deposition at 76-77,

RE 49-7, Page ID # 4470.  According to Abraham, "the decision was made to wait

until fall of 2018 to post for [Lecturer position]," although no posting has been made

to date.  Abraham Deposition at 290-91, RE 49-1, Page ID # 4222.  Steelant said the

search for the Lecturer position is still open and the position is going forward.  *See*

Steelant Deposition at 34-35, 45, RE 49-7, Page ID # 4460, 4463.

**B.    Procedural History.**

George initiated this lawsuit on November 6, 2017.  Complaint, RE 1, Page ID

# 1-28.  On January 24, 2018, the Court scheduled trial to begin February 4, 2019

with a Final Pretrial Conference to be held on January 9, 2019.  Civil Trial Order, RE

25

17, Page ID # 125-135.  On October 26, 2018, the Parties filed Joint Stipulations including claims that arose and were discovered during the lawsuit – failure-to-hires for "Lecturer, School of Technology" and "Lecturer, Math and Statistics."  Joint Stipulations, ¶¶ 27, 35, 36, RE 33, Page ID # 302, 306-7.  YSU filed summary judgment on October 29, 2018 seeking to dismiss all of George's claims.  Motion for Summary Judgement at 19, RE 45, Page ID # 3586.  On December 12, 2018, George filed a response in opposition to summary judgment.  Response in Opposition, RE 50, Page ID # 4557-4596.[8]

On December 24, 2018, George filed a Motion to Supplement Complaint to formalize the "Lecturer, School of Technology" and "Lecturer, Math and Statistics" failure to hire claims.  Motion for Leave to File Supplemental Complaint, RE 52, Page ID # 4653-4674.  These claims were addressed in the Joint Stipulations, had been through discovery, and YSU sought to dismiss them on summary judgment.  *See supra*.  On January 2, 2019, the Parties jointly filed their "Proposed Stipulation As To Undisputed Facts For Use At Trial" in which the Parties specifically addressed those failure to hire claims.  Proposed Stipulation at ¶¶ 25, 31, 32, RE 57, Page ID #

---

[8]On November 21, 2018, the Parties requested the Court to postpone the January 9, 2019 Final Pretrial Conference and February 4, 2019 trial date to give the Court enough time to review and rule on the pending summary judgment motion, (RE 47, Page ID #3665), and the Court deferred ruling on that Motion. Order [non-document] of 1/7/2019 denying Motion as moot.

4774, 4777-4778. Defendants filed an opposition on December 28, 2018, and an opposition supplement on January 6, 2019. Defendants' Memorandum in Opposition, RE 56, Page ID # 4758-4770; Defendants' Supplemental Memorandum, RE 58, Page ID # 4780-4785.

The next day (January 7, 2019) and two days before the Final Pretrial Conference, the Court granted YSU's Motion for Summary Judgment in its entirety dismissing all of George's claims and denied his Motion for Leave to File Supplemental Complaint. District Court Opinion, RE 59, Page ID # 4796-4822. With respect to George's retaliation claim, the Court found that George met the first three prongs of a retaliation *prima facie* case but could not show a causal connection. District Court Opinion, RE 59, Page ID # 4818-20. The Court held that a purported three year gap between George's protected activity and his termination was fatal to his claim. *Id.* The Court failed to address George's evidence of disparate treatment or pretext. *See id.*

As to the failure-to-hire into the Dual Enrollment and Support Services position, the Court found that George established a prima facie case of age discrimination but rejected his evidence that contrary to YSU's claim he was qualified for the position and the younger candidate had been pre-selected. District Court Opinion, RE 59, Page ID # 4809-12. The Court stated that George had to produce

27

additional evidence "suggesting that the alleged pre-selection was because of age." *Id.*, Page ID # 4812. With respect to the failure-to-hire into the position of Assistant Director of Research Services, the Court found a *prima facie* case of age discrimination but rejected George's evidence of pretext. District Court Opinion, RE 59, Page ID # 4815-16. According to the Court, George produced "no evidence, other than the fact that Riggleman is significantly younger, suggesting his age was a but-for cause of his non-hire." *Id.*

The Court also dismissed George's failure-to-hire into the position of Assistant Director of Research Services retaliation claim finding that the nine month gap between his EEOC filing and application was too remote to support an inference of retaliation, and that evidence that Hripko reported George's candidacy to Abraham and conducted the interview himself did not show retaliation. *Id.*, Page ID # 4817-18. The Court credited Hripko's claim that George "was not impressive in his interview" but did not address George's evidence that the younger successful applicant was not more experienced than he. *See id.*

As to George's claim that YSU failed to hire him into the position of Lecturer, Engineering Technology that arose during this lawsuit, the Court mistakenly found that George had "abandoned" this claim. *See* District Court Opinion at 7-8 n.3, RE 59, 4802-3. After George brought this error to the Court's attention in his Motion for

Reconsideration, (Motion for Reconsideration, RE 62, Page ID # 4845-47), the Court granted reconsideration in part finding that George in fact had "opposed summary judgment with respect to his Title VII retaliation claim for failure to hire into the position of Lecturer, School of Technology - First Year Engineering Technology." Reconsideration Order, RE 65, Page ID # 4885. Nevertheless, the Court dismissed the claim for a failure to exhaust administrative remedies despite the fact that the Parties agreed to waive administrative exhaustion and the Sixth Circuit permits such waiver, citing a then pending Supreme Court case – *Fort Bend Cty., Tex. v. Davis*, 139 S. Ct. 915 (2019). *Id.*, Page ID # 4886. On June 3, 2019, the Supreme Court unanimously decided in keeping with this Court's precedent that Title VII's administrative exhaustion requirement is not jurisdictional and is subject to waiver. *Davis*, 139 S. Ct. 1843 (2019).

## IV.  SUMMARY OF THE ARGUMENT

There is sufficient evidence of a retaliatory causal connection between George's protected activity and his termination.  Provost Abraham terminated George just two weeks after YSU's settlement obligations to George ended and he said that YSU now was finished with George's reinstatement.  This was Abraham's first opportunity to retaliate against George.  In contrast, Abraham renewed the contracts of five other recommended Term faculty – none of whom had engaged in protected activity.  Upon reinstatement, George was treated differently than other faculty including being denied service on committees, participation in the accreditation process, and teaching upper-level classes.  The Court refused to consider George's pretext evidence including Abraham's false blame of Sturrus and Lamb, and his false justification that George's position required elimination because Vuksanovich returned.

Also there is a retaliatory causal link between George's protected activity and failure-to-hire into the Assistant Director, Research Services position.  Already terminated and not employed, YSU's refusal to hire him nine months after filing his EEOC charge was the first opportunity to retaliate against George.  Other indicia of retaliatory conduct included that Hripko (a) was close with Abraham, (b) told Abraham George was interviewing for the position, (c) sat in on George's interview

but not for any other candidate, and (d) claimed subjectively that George was "not impressive" in his interview.  The Court impermissibly weighed and discounted George's evidence that disputed Hripko's claim he was not impressive in the interview, and that George was more experienced than the successful candidate who was preselected.

Under *Reeves v. Sanderson Plumbing Products, Inc.*, 120 S. Ct. 2097 (2000), George established both a *prima facie* case of age discrimination and that the successful candidates had been preselected, which is sufficient to proceed to a Jury. Nevertheless, the Court claimed that George failed to provide additional evidence of age discrimination at the pretext stage (pretext plus) in violation of *Reeves*.

The Court erroneously dismissed George's retaliation claims that arose and were litigated during this lawsuit based on a failure to exhaust.  In accordance with Circuit precedent and in the interests of judicial economy and finality, the Parties agreed to waive administrative exhaustion to allow the Court to address those claims on the merits.  The Court refused based on a speculative change to this Circuit's law that did not materialize.

# V.  ARGUMENT

George respectfully requests this Court to reverse the District Court's grant of summary judgment and permit him to go to trial on his employment discrimination claims.

## A.    Scope and Standard of Review.

This Court's scope and standard of review for the grant of summary judgment is de novo review.  *Fed. Trade Comm'n v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 629 (6th Cir. 2014).  Summary judgment is appropriate only in instances where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. PROC. 56(a).  Evidence must be viewed in a light most favorable to the non-moving party and, if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," the court must deny summary judgment.  *E.M.A. Nationwide, Inc.*, 767 F.3d at 629 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-8 (1986)).  Viewing the evidence in the light most favorable to George, this Court should find that there is sufficient evidence of retaliation and discrimination for a Jury to find in his favor.

**B.    George Established A Causal Connection Between His Protected Activity And His Termination.**

For a prima facie case of retaliation under Title VII, a plaintiff must establish: (1) he engaged in a protected activity; (2) his exercise of such protected activity was known by the employer; (3) thereafter, the employer took an action that was materially adverse to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action. *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 775 (6th Cir. 2018). There is no dispute that George satisfied the first three retaliation prongs. District Court Opinion, RE 59, Page ID # 4818. He filed and settled a Title VII discrimination lawsuit, Abraham was aware of that protected activity, and thereafter Abraham fired him. *Id.* Contrary to the District Court, this Court should find that George established a causal connection between his protected conduct and his termination.

"The burden of proof at the prima facie stage is minimal; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007). "In determining whether there is a causal relationship between a plaintiff's protected activity and an allegedly retaliatory act, courts may consider whether the employer treated the plaintiff differently from

33

similarly situated individuals and whether there is a temporal connection between the protected activity and the retaliatory action." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516-17 (6th Cir. 2009). A court also may consider evidence of pretext, that is evidence "sufficient for the jury to reject [the defendant's] legitimate, nonretaliatory reasons" for its actions as pretextual. *EEOC v. New Breed Logistics*, 783 F.3d 1057, 1070 (6th Cir. 2015).

George filed his initial EEOC charge and federal lawsuit related to his tenure denial against YSU and Hirtzel in 2006. Exhibit 2, RE 48-2, Page ID # 3673. Shortly thereafter, Hirtzel was demoted. She was replaced ultimately by her friend and former student Abraham. The Parties settled in February 2008 and Abraham oversaw the settlement. YSU paid George $30,000, reinstated him as a Term faculty member, agreed not to terminate him absent just cause for four years (2008-09 to 2011-2012), and further agreed to provide him health benefits until he reached age 65 in April 2015. Exhibit 4, RE 48-3, Page ID # 3685-3692.

In October 2014, Abraham was promoted to Provost and, as a result, now was in charge of all Term faculty renewal decisions. George enjoyed a positive relationship with both the prior Provost (Ikram Khawija) and YSU President (Cynthia Anderson) who renewed his annual contracts. George Deposition, RE 49-3, Page ID # 4289, 4301, 4301-2. On April 5, 2015, George turned 65 and, as a result, YSU no

longer was obligated to provide him health benefits pursuant to the Settlement Agreement. George Declaration, RE 50-1, Page ID # 4597-8; George Deposition at 312, RE 49-3, Page ID # 4354.

In 2015, interim STEM College Dean Sturrus recommended to Abraham the renewal of six (6) Term faculty members, including three from George's Department – George, Gross, and Coyne. Abraham warned Sturrus that there would be a loss of "Term" positions (the one held by George), and "that whatever years of reinstatement there were [for George under the Settlement Agreement], [we're] finished." Sturrus Deposition at 22-23, RE 49-8, Page ID # 4479. Clearly, Abraham was aware that YSU had satisfied its settlement obligations to George and felt unfettered to eliminate George's position.

On April 20, 2015, just two weeks after YSU's settlement obligations ended, Abraham fired George. In contrast, Abraham renewed and continued to employ the other five (5) recommended STEM College Term faculty, none of whom (including Gross and Coyne) had engaged in protected conduct. George submits that this limited two-week lapse supports an inference of discrimination. *See Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283-84 (6th Cir. 2012) (collecting cases holding that a two-to-three month time lapse between a plaintiff's protected activity and occurrence of a materially adverse action is sufficient temporal proximity to satisfy a plaintiff's

prima facie case of retaliation).

The April 2015 termination was the first opportunity that Abraham had to retaliate against George after YSU fulfilled its requirements under the Settlement Agreement and, given the prior dealings, a Jury could find residual hostility between the Parties. *See Snodgrass-King Pediatric Dental Assocs., P.C. v. Dentaquest USA Ins. Co.*, 79 F. Supp. 3d 753, 764-765 (M.D. Tenn. 2015) (finding plausible inference of "residual hostilities between the parties" where adverse action taken two years after settlement of plaintiffs' lawsuit that resulted in the payment of compensation); *Lipschultz v. Holy Family Univ.*, No. 15-5760, 2017 U.S. Dist. LEXIS 23476, *21-24(E.D. Pa. Feb. 17, 2017) (finding employer "waited until the first opportunity it had to retaliate against Plaintiff—when it fulfilled its requirements under the Settlement Agreement") (citing *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013) (finding an inference of a causal connection where "the adverse action occurred at the first actual opportunity to retaliate"); *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 131 (2d Cir. 2012) (concluding that a four-year gap between protected activity and adverse action "did not preclude a causal inference" because the plaintiff was not employed by the defendant for that entire period, and the defendant "took an adverse employment action against her on its first opportunity to do so")).

36

The District Court's finding that YSU's first opportunity to retaliate was in 2012 thereby establishing a three year gap is not supported by the evidence. In 2012, Abraham (Hirtzel's friend and student who oversaw the settlement) was the College Dean and not the Provost; thus, he was not the actual decision-maker on George's 2012-2014 contract renewals. It was not until he became the Provost in the Fall 2014 that he was in the position to eliminate George's position, which he did on April 20 2015, just two weeks after YSU's settlement obligations ended.

George's position is supported by this Court's decision in *Ford v. GMC*, 305 F.3d 545 (6th Cir. 2002).

> In *Ford*, the plaintiff alleged that his supervisor retaliated against him as a result of the plaintiff's filing of a race-discrimination charge with the EEOC. For a five-month period following his EEOC filing, the plaintiff voluntarily worked in a different position and was not within his supervisor's sphere of authority. *Id.* at 550. When the plaintiff was placed back under his supervisor's direction, however, the supervisor allegedly retaliated by imposing an increased workload on plaintiff, subjecting his performance to heightened scrutiny, and threatening to terminate him. *Id.* at 550-51. This Court determined that the five-month interval between the protected activity and the adverse employment actions did not foreclose a finding of a causal connection because the plaintiff was under the control of a different supervisor during this period. *Id.* at 554-55.

*Dixon*, 481 F.3d at 335.

Even assuming a three year gap, the District Court's finding that such a gap in and of itself was fatal to George's retaliation claim is contrary to the law in this

Circuit.  As this Court stated:  "[A] mere lapse in time between the protected activity

and the adverse employment action does not inevitably foreclose a finding of

causality.  This is especially true in the context of a reinstatement case, in which the

time lapse between the protected activity and the denial of reinstatement is likely to

be lengthier than in a typical employment-discrimination case."  *Dixon*, 481 F.3d at

335.  This Court has recognized that a "ten-year gap in time is not dispositive of the

causation requirement."  *Id.*  In *Sharp v. Aker Plant Servs. Group*, 600 Fed. Appx.

337 (6th Cir. 2015), this Court found that a fifteen month lapse between the protected

conduct and the failure-to-hire supported retaliatory causation.  Following an earlier

termination and subsequent protected activity, the first opportunity the employer had

to retaliate against the plaintiff was not until he reapplied for a position fifteen

months later.  *Id.*, 600 Fed. Appx. 337 at 341-2.[9]

In addition to temporal proximity, there is evidence that during the period of

reinstatement YSU treated George less favorably than other employees.  *See Moore*

*v. KUKA Welding Sys.*, 171 F.3d 1073, 1080 (6th Cir. 1999) (causal connection may

---

[9]Courts outside this Circuit similarly have found that a retaliation plaintiff
can establish causation involving a lapse in time by showing that the employer
took the first opportunity to retaliate after protected activity.  *See McGuire v. City*
*of Springfield, Ill.*, 280 F.3d 794, 796 (7th Cir. 2002) (ten-year delay); *Price v.*
*Thompson*, 380 F.3d 209, 213 (4th Cir. 2004); *Templeton v. First Tenn. Bank,*
*N.A.*, 424 F. App'x 249, 251 (4th Cir. 2011) (retaliated against upon employer's
first opportunity to do so, . . . two years after [protected activity]").

38

be established "by showing that [plaintiff] was treated differently from other employees."). In *Moore*, this Court found sufficient evidence of causation where the plaintiff was isolated from his co-workers within weeks of filing an EEOC charge, and thereafter was subjected to more frequent disciplinary writeups for trivial matters and unwarranted criticism of his work. *Moore*, 171 F.3d at 1080; *Ballanger v. Bunge Foods*, No. 00-5120, 2000 U.S. App. LEXIS 33376, at *5 (6th Cir. Dec. 12, 2000) (allegations of heightened scrutiny and unwarranted reprimands supported causation). In *Sharp*, the Court found that evidence that the employer did not discipline a worker who took photos inside the plant yet failed to rehire the plaintiff for engaging in the same activity supported an inference of retaliatory causation. *Sharp*, 600 Fed. Appx. at 342.

Upon reinstatement, George was not welcomed back by YSU. George Declaration, RE 50-1, Page ID # 4607. Two Department colleagues complained to the Department Chair that they were "disturbed" and "concerned" by George's reinstatement. George Deposition at 21, 47, RE 49-3, Page ID # 4282, 4288. Abraham in fact was aware of "displeasure amongst some of the faculty" about George's return. Abraham Deposition at 52, 54-5, RE 49-1, Page ID # 4162-3. Also, during the 2013-2014 academic year, Costarell was on sabbatical yet despite a strong need for covering thermal fluid coursework, George was denied the opportunity to

teach such advanced coursework even though it clearly fall within his field of expertise.  George Declaration, RE 50-1, Page ID # 4610-4611.  He also was denied the opportunity to teach a fluid mechanics class outside of his Department despite a specific request from that Department's Chair.  *Id.*  George became the only full-time faculty member in his Department who was denied membership on search committees despite asking to be on those committees.  George Deposition at 99, RE 49-3, Page ID # 4301.  He was excluded from participating in the Department's accreditation process in which he previously had participated.  *Id.*  Further, he was excluded from serving on Industrial Advisory Committees despite his 20 years of industrial experience.  *Id.*

In April 2015, George was one of six STEM College Term faculty up for renewal and one of three from his Department.  None of these similarly situated employees engaged in protected activity.  All five of those faculty members, including the two from George's Department, were renewed while George was not.  The evidence that George was treated less favorably than other employees during his reinstatement supports a retaliatory causation finding.  *See Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 615-16 (6th Cir. 2019) (evidence supporting causation included "the different treatment of a similarly situated employee who did not engage in conduct protected by Title VII"); *Moore*, 171 F.3d at 1080; *Sharp*, 600 Fed. Appx.

40

at 342.

Further, there is ample evidence of pretext in this case to support causation.[10]
*See New Breed Logistics*, 783 F.3d at 1070; *Hubbell.*, 2019 U.S. App. LEXIS 23300,
*22-23.  In *Redlin*, this Court reversed summary judgment finding sufficient evidence
of retaliatory causation.  At the prima facie stage, the Court highlighted evidence that
called into question the employer's justifications for transferring the plaintiff.  The
supervisor testified that he transferred plaintiff because of her "gender complaint,"
which explicitly showed causation, and because she allegedly gave an improper
warning to another employee even though a colleague who engaged in identical
misconduct was not transferred.  *Redlin*, 921 F.3d at 615-616.  In *New Breed
Logistics*, four plaintiffs brought suit alleging that they were terminated in retaliation
for complaining about a supervisor's sexually harassing conduct.  Following a verdict
in plaintiffs' favor, this Court upheld the district court's finding of causation where
there was sufficient evidence for the jury to reject the employer's legitimate,
nonretaliatory reasons for the plaintiffs' terminations as pretextual.  *New Breed
Logistics*, 783 F.3d at 1070.

---

[10]The District Court failed to consider George's evidence of pretext even
though he raised it both in his summary judgment Brief in Opposition and his
Motion for Reconsideration.  Brief in Opposition, RE 50, Page ID # 4583-4586;
Motion for Reconsideration, RE 62, Page ID # 4846.

There is sufficient evidence for a jury to reject YSU's legitimate, nonretaliatory reasons for George's termination as pretextual.  Abraham conspicuously attempted to blame others for the decision.  First, Abraham swore in his May 6, 2016 EEOC affidavit that he and Sturrus jointly "determined that the School of Engineering Technology could not sustain Dr. George's position."  Exhibit 34 at ¶ 11, RE 48-13, Page ID # 3787; Abraham Deposition at 217, RE 49-1, Page ID # 4204.  However, Sturrus testified that he actually recommended George for renewal and that Abraham alone decided to terminate George.  Sturrus Deposition at 30-31, 35, 56, 95, RE 49-8, Page ID # 4481-2, 4487, 4497.  Abraham flip-flopped from his earlier sworn affidavit conceding at his deposition that Sturrus was not involved in the termination decision that he alone made.  Abraham Deposition at 217-18, RE 49-1, Page ID # 4204.

Next, Abraham claimed that Department Chair Lamb was the one who decided to eliminate George's position.  Abraham Deposition at 69, 97, RE 49-1, Page ID # 4167, 4174.  According to Abraham, "Carol [Lamb] made the determination, when we eliminated a position, that it was that position [George's] that would be eliminated."  *Id*.  Lamb testified to the contrary that Abraham never consulted her about the termination decision.  *Id.*  In fact, she clarified that she actually recommended George for renewal and learned of George's termination only after-the-fact.  *See* Lamb Deposition at 29, 42, 48, 53, 58-59, 61, RE 49-5, Page ID # 4418,

42

4421, 4424-6.

George disputes Abraham's claim that he had to terminate George because of the return of Vuksanovich, the faculty member who had been on a three year leave. Abraham Deposition at 85-86, RE 49-1, Page ID # 4171. According to Abraham, George replaced Vuksanovich during the leave and it only made sense to bump George upon Vuksanovich's return. Abraham Deposition at 195, RE 49-1, Page ID # 4198. The evidence shows that Ron Griswold (and not George) replaced Vuksanovich and taught his courses in both 2012-13 and 2013-2014. *See* Exhibit 107, RE 48-31, Page ID # 4087. At the time, Abraham himself acknowledged that Griswold "had filled in admirably" for Vuksanovich. *Id.* at Page ID # 4089.

In 2014-2015, some of Vuksanovich's courses were covered by a similarly situated Term faculty member – Daryl Gross. Exhibit 76, RE 48-24, Page ID # 4020; Lamb Deposition at 66, RE 49-5, Page ID # 4427. Both Gross and Vuksanovich teach in the same area – Design and Manufacturing. Abraham Deposition at 142, RE 49-1, Page ID # 4185. In contrast, George's area is in Thermal Fluids and George taught primarily introductory courses entitled "ENTC 1500," "ENTC 1505," and "STEM 1513," and not any of Vuksanovich's or Gross's courses. George Declaration at ¶ 67-68, RE 50-1, Page ID # 4606-7. Shortly before George's termination, Gross confided in George that if Vuksanovich were to return, "he (Gross) was really

43

concerned about his position." George Deposition at 69, RE 49-1, Page ID # 4167.

At the time, George had no reason to suspect he would not be renewed. George

Declaration ¶ 107, RE 50-1, Page ID # 4616; George Deposition at 131-32, RE 49-3,

Page ID # 4309. Upon Vuksanovich's return, Abraham renewed Gross (who never

sued YSU and was concerned about his position) while he terminated George (the

only one who sued YSU and was not concerned about his position). Abraham

Deposition at 88-89, 136, RE 49-1, Page ID # 4171-2, 4183; George Deposition at

165, RE 49-3, Page ID # 4318.

YSU's claim that George was terminated because of budgetary concerns is

false. Since 2012, YSU employed 5 Term faculty members in the Department:

George, Griswold, Gross, Daniel Coyne, and Joseph Sanson. Exhibit 76, RE 48-24,

Page ID # 4021; Lamb Deposition at 12-14, RE 49-5, Page ID # 4414; George

Deposition at 102, RE 49-3, Page ID # 4302. George, the only one who sued YSU,

was recommended for renewal but then was terminated. *See id.*; Sturrus Deposition

at 56, 59, RE 49-8, Page ID # 4487-4488; Abraham Deposition at 89, 147, RE 49-1,

Page ID # 4172, 4186. In April 2015, Abraham renewed Term faculty members

Gross and Coyne but terminated George. *See* Exhibit 76, p. 7, 10, RE 48-24, Page ID

# 4021, 4024; Abraham Deposition at 186-89; RE 49-1, Page ID # 4196. Abraham

also hired two new tenure-track faculty in the Department – Sanson (age 45) and

44

Zapka (age 40).  *See* Exhibit 76 at 7, 10, RE 48-24, Page ID # 4021, 4024; Abraham

Deposition at 186-89, RE 49-1, Page ID # 4196.  According to Sturrus, "[a]t the time

Martin wasn't looking for just replacing someone same old same old; he wanted new

directions."  Sturrus Deposition at 48, RE 49-8, Page ID # 4485.

In 2015, STEM College had "stable enrollment" and continued to hire new

faculty members.  Sturrus Deposition at 46, RE 49-8, Page ID # 4485; Lamb

Deposition at 35, 57, RE 49-5, Page ID # 4419, 4424; George Declaration ¶ 78-80,

RE 50-1, Page ID # 4609.   The enrollment within the Engineering Technology

Department was stable.  Lamb Deposition at 35, RE 49-5, Page ID # 4419.  As

Interim Dean, Sturrus never was asked to identify possible budget savings, such as

not filling vacant positions.  Sturrus Deposition at 37, RE 49-8, Page ID # 4483.  In

2015, there were 15 retirements in the STEM College reflecting a savings of $1.5

million.  Sturrus Deposition at 46, RE 49-8, Page ID # 4485; Abraham Deposition at

108, RE 49-1, Page ID # 4176.   Sturrus sent Abraham six Term renewal

recommendations (including George); Abraham renewed every one except George.

*See Hubbell v. FedEx SmartPost, Inc.*, Nos. 18-1373/1727, 2019 U.S. App. LEXIS

23300, *22-23 (6th Cir. Aug. 5, 2019)  (plaintiff's evidence of pretext, including that

she was singled out for adverse treatment and disciplinary writeups were unjustified,

supported finding of retaliatory causation).

YSU's claim that Abraham did not *renew* four other older Term faculty as a cost-cutting measure likewise is disputed. None of these individuals was subjected to non-renewal as alleged. Discovery showed that (1) Larkin resigned, (Exhibit 108, RE 48-32, Page ID # 4101-4012) (2) Ellenwood likewise resigned (Exhibit 109, RE 48-33, Page ID # 4013); (3) Pittman violated YSU's discrimination/harassment policy causing separation (Exhibit 112 at 6, RE 48-36, Page ID # 4144) and; (4) Kowalker left due to visa issues. *See* Exhibit 110 at 11, Page ID # 4114; Sturrus Deposition at 64-5, RE 49-8, Page ID # 4489. YSU's budget justification for George's termination is highly suspect under the circumstances and can be rejected by a Jury. *See Cutcher v. Kmart Corp.*, 364 Fed. Appx. 183, 190-191 (6th Cir. 2010) (fact question as to whether plaintiff's protected activity led to her lower RIF appraisal scores, and thus her termination, supported prima facie case of causation).

Based on George's evidence of a temporal connection between his protected activity and termination, that George was treated less favorably than similarly situated individuals during his reinstatement, and that a Jury can reject Abraham's alleged nonretaliatory reasons for George's termination as pretextual, this Court should find that George has established a retaliatory causal connection and that his Title VII retaliation claim should go forward to a jury. *Redlin*, 921 F.3d at 615-616. Appellant incorporates his discussion of pretext above in response to Appellees' asserted

46

nonretaliatory reason(s) for his termination.

**C.    George Established A Causal Connection Between His Protected Activity And YSU's Failure To Hire Him As Assistant Director of Research <u>Services.</u>**

Following George's April 2015 termination, he filed an EEOC Charge of retaliation and age discrimination on January 21, 2016.  In the body of the Charge, George named Provost Martin Abraham as the decision-maker for his termination and claimed that it was retaliatory.  Exhibit 30 at ¶¶ 9, 62-64, RE 48-10, Page ID # 3754, 3759.  In November 2016, while he no longer worked at YSU, George applied for the position of Assistant Director of Research Services.  Exhibit 72, RE 48-22, Page I.D. # 3953-3993.  Although George was one of four applicants selected for a Skype interview, he did not get the position.  Hripko Decl., ¶ 5, RE 45-2, Page ID # 3613. Instead, YSU hired Ashley Riggleman.  George Declaration, RE 50-1, Page ID # 4635.  George claims that YSU failed to hire him in retaliation for his protected activity.  Amended Complaint, RE 19, Page ID # 163.

The District Court held that George failed to establish a causal connection. According to the Court, the purported nine month gap between George's EEOC charge and his application for the position did not support causation.  District Court Opinion, RE 59, Page ID # 4817.  The Court's ruling is in error; since George no longer was employed, this was the first opportunity for YSU to retaliate against him.

In *Sharp*, 600 Fed. Appx. 337, this Court found that a fifteen month lapse between the protected conduct and the failure-to-hire supported causation where it was the first opportunity the employer had to retaliate against the plaintiff who had been terminated, engaged in protected conduct, and then reapplied. *Id.* As in *Sharp*, this Court should find that the nine month lapse in this case supports causation because it was the first opportunity for YSU to retaliate against George after he had been terminated, filed an EEOC charge, and applied for the position of Assistant Director of Research Services. *See id.*; *see also Dixon*, 481 F.3d at 335.

There is other indicia of retaliatory conduct. For example, Hripko, the hiring manager, reported directly to Abraham and was very close to him. George Deposition at 308, RE 49-3, Page I.D. # 4353; Abraham Deposition at 250, RE 49-1, Page I.D. # 4212. Hripko told Abraham (who would have to approve the hire) that George was up for consideration and scheduled for an interview. Abraham Deposition at 249-50, RE 49-1, Page ID # 4212. Thereafter, Hripko who was not a member of the Search Committee, replaced the Search Committee Chair and sat in on George's interview. Hripko Declaration, ¶ 5, RE 45-2, Page ID # 3613. Tellingly, Hripko did not sit in on any of the interviews of the other three candidates. *Id.* Based on this evidence and temporal proximity, a jury could infer that Hripko inserted himself in the selection process in order to deny George the position and thereby curry favor with his boss

who had been formally accused by George of discriminatory conduct. *See Sharp*, 600 Fed. Appx. at 341-342 ("one could reasonably infer that Aker declined to rehire Sharp in retaliation for his then-pending discrimination action" where "no opportunity for retaliation manifested until the staffing agency tried placing Sharp back at DuPont's Louisville plant," "Aker rejected Sharp on the same day it received his application," and "Atkins, the Aker employee who fielded the proposal that Sharp fill Aker's vacancy at the DuPont plant, became personally involved in the underlying lawsuit just two months before rejecting him").

The District Court found without explanation that this evidence did not support a prima facie case of causation. District Court Opinion, RE 59, Page ID # 4817-18. In doing so, the District Court necessarily and impermissibly weighed the evidence which requires reversal. *See Cutcher*, 364 Fed. Appx. 183, 190-191 (reversing grant of summary judgment where lower court impermissibly weighed and dismissed plaintiff's evidence supportive of causation). In addition, evidence that Abraham subsequently pulled the posted position in the School of Engineering Technology because George had applied and had a pending lawsuit supports a finding that YSU failed to hire George in retaliation for his protected activities. *See Malin v. Hospira, Inc.*, 762 F.3d 552, 560 (7th Cir. 2014).

The District Court further found that George failed to show that YSU's explanation for the failure-to-hire was a pretext for discrimination.  District Court Opinion, RE 59, Page ID # 4818.  YSU alleged that George was not hired because he allegedly was "not impressive in his interview."  *Id.*  This justification is completely subjective and, therefore, likely to mask pretext.  *See Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 648 (6th Cir. 2015) (citing *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1136-37 (9th Cir. 2003) ("Where termination decisions rely on subjective evaluations, careful analysis of possible impermissible motivations is warranted because such evaluations are particularly 'susceptible of abuse and more likely to mask pretext.'").  George disputes that he was "not impressive" in his interview including the claim based on his purported unfamiliarity with "electronic research administration" software "Moderas."  George declaration, ¶¶ 203-04, RE 50-1, Page ID # 4635.  "Moderas" was not listed in the search qualifications, George as an engineer readily could have mastered that software in short order, and YSU never rolled out the Moderas software and the company went bankrupt.  *Id.*  Based on this evidence, a Jury could infer that YSU's asserted justification that it did not hire him because he was "not impressive" in the interview was a pretext for retaliation.

50

**D.    District Court Erroneously Required George To Satisfy The Pretext-Plus Standard For His Age Discrimination Claims.**

George asserts that YSU failed to hire him for the positions of Director of Dual Enrollment & Support Services and Assistant Director of Research Services because of his age in violation of the ADEA.  Amended Complaint, RE 19, Page ID # 158-9.  The District Court found that George established a prima facie case of age discrimination for both claims.  District Court Opinion, RE 59, Page ID # 4809-12, 4815-6.   Indeed, George was in his mid-60's when he applied, the Court found he was qualified for both positions, and YSU failed to hire him and instead hired significantly younger individuals, namely, Seitz (forties) and Riggleman (age 34).  *Id.*  At the pretext stage, the District Court erroneously required George to satisfy the discredited "pretext-plus" standard.

As this Court stated, under *Reeves v. Sanderson Plumbing Products, Inc.*, 120 S. Ct. 2097 (2000), "the probative value of pretext in a discrimination case has been reaffirmed, and we are reminded that when the elements of a prima facie case have been met, a plaintiff need not show both pretext and discriminatory intent ('pretext plus')."  *Ross v. Campbell Soup Co.*, 237 F.3d 701, 708-709 (6th Cir. 2001).   In *Reeves*, the Court held that: "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since

the employer is in the best position to put forth the actual reason for its decision. . .
. Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that
the employer's asserted justification is false, may permit the trier of fact to conclude
that the employer unlawfully discriminated." *Id.* at 2108-09.

For the Director of Dual Enrollment position, George produced evidence in
addition to his prima facie case showing that the hiring of the sufficiently younger
candidate (Seitz) was predetermined and she was treated more favorably than he.
Following the search, Goldthwait expressed to George skepticism about the search
process and another faculty member verified to George that the hiring was
"pre-determined." George Deposition at 198, RE 43-9, Page ID # 4326. In this
litigation, fellow Search Committee member Carlson encouraged Goldthwait to
falsely construct his testimony. Goldthwait Deposition, RE 49-4, Page I.D. # 4370.
When it was discovered that Seitz did not meet the minimum requirements of the
position, YSU through Spalsbury immediately terminated the search, revised the job
posting to require a Master's in Math "by August 31, 2015" to suit Seitz's graduation
date if she passed her remaining exams, and reposted the position. When Goldthwait
asked Spalsbury to consider relaxing the requirements as it did for Seitz so the
Committee also could evaluate George's application, Spalsbury refused. Goldthwait
Deposition at 17, 19-20, 46-7, 79, RE 49-4, Page ID # 4368, 4375, 4381.

52

George also disputed YSU's claim that he was not minimally qualified for the position. At YSU, Search Committees assess equivalencies for minimum educational requirements. The math content area in George's M.S. in Education combined with his Doctoral concentration in Research (statistical) coursework and dissertation is equivalent to the coursework and thesis requirements for a Master's in Math & Statistics. George Declaration, RE 50-1, Page ID # 4633. Indeed, the District Court found at the prima facie stage that George was qualified for the position. The evidence of pre-selection of a younger candidate (Seitz) discredits YSU's rationale for its failure-to-hire George. *See e.g.*, *Lyons v. Sec'y of the U.S. Air Force*, No. 15-3011, 2016 U.S. App. LEXIS 23652, at *3-*4 (6th Cir. Jul. 15, 2016) ("the fact that the [employer's] potentially pre-selected candidates were all male contributes to an inference that she was passed up for the promotions because she is female"); *Goostree v. Tennessee*, 796 F.2d 854, 861 (6th Cir. 1986) (evidence of preselection... 'operates to discredit the employer's proffered explanation for its employment decision,' and 'is relevant evidence of the employer's motivation'").

The District Court discounted this evidence of preselection claiming that George failed to show both pretext and discriminatory intent. According to the Court:

> [I]t is unclear how Seitz's pre-selection shows YSU did not hire Plaintiff because of his age. .... The record shows that, if Plaintiff's failure to meet the minimum educational qualifications was not the reason for his

non-hire, it was because of Spalsbury's pre-existing professional relationship with Seitz. Plaintiff only establishes that Seitz is significantly younger than he is. He produces no other evidence suggesting that the alleged pre-selection was because of age.

District Court Opinion, RE 59, Page ID # 4811-12. The Court's decision to resolve the factual dispute against George requiring him to present additional evidence of age discrimination constitutes "pretext plus" in violation of the *Reeves* summary judgment standard. Because George stated a prima facie case of age discrimination and subsequently rebutted YSU's asserted justification, *Reeves* prohibits a grant of summary judgment where "the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." 530 U.S. at 133.

For the Assistant Director of Research Services, George produced evidence in addition to his prima facie case showing that the hiring of the significantly younger candidate (Riggleman) was predetermined and she was treated more favorably than he. Riggleman was living in Utah (Exhibit 72, p. 7213, RE 48-22, Page ID # 3964) when she met Hripko and expressed an interest in returning to Ohio. George Declaration at ¶ 203, RE 50-1, Page ID # 4635. After Hripko wrote the posting for the position, Riggleman was the first person to apply (within 24 hours) suggesting an inside track. Exhibit 72, YSU 7213 (11/1/16), RE 48-22, Page ID #3964. Prior to

George's interview, Hripko already had ordered software (MODERAS) familiar to Riggleman. George Deposition at 249-50, RE 49-3, Page ID # 4339; Exhibit 72, p. YSU 7219, RE 48-22, Page ID # 3970. As stated above, George disputes YSU's claim that he was not hired because he purportedly was "not impressive" in his interview. Moreover, a colleague consulted by Hripko regarding Riggleman's candidacy deemed her immature and plainly communicated this concern to Hripko.

The District Court discounted this evidence indicating that none of it showed pretext. District Court Opinion, RE 59, Page ID # 4816. George submits that this Court should find this sufficient evidence of pretext. *See Goostree*, 796 F.2d at 861 (evidence of preselection...'operates to discredit the employer's proffered explanation for its employment decision,' and 'is relevant evidence of the employer's motivation'"). The Court also found that "Plaintiff provides no evidence, other than the fact that Riggleman is significantly younger, suggesting his age was a but-for cause of his non-hire." District Court Opinion, RE 59, Page ID # 4816. George submits that the District Court once again erroneously applied the "pretext plus" standard to his age discrimination claim contrary to the *Reeves* summary judgment standard requiring reversal by this Court.

**E.    The Court Erred When It Dismissed George's Failure-To-Hire Retaliation Claims Which Arose During The Lawsuit.**

The question of whether a discrimination plaintiff has administratively exhausted his claims is not a jurisdictional issue.  *See Adamov v. U.S. Nat'l Bank Nat'l Ass'n*, 726 F.3d 851, 856 (6th Cir. 2013) ("Congress has not explicitly restricted the court's jurisdiction in cases where a plaintiff has not exhausted administrative remedies").  The defense of administrative exhaustion is subject to waiver.  *See Hampton v. Caldera*, 58 Fed.Appx. 158, 160 (6th Cir. 2003) (quoting *McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002)).

The failure-to-hire claims that arose during this lawsuit were subject to discovery and summary judgment practice.  The Parties agreed in the interest of judicial economy and finality to waive administrative exhaustion and requested the Court to proceed to a ruling on the merits.  *See* Response to Motion for Reconsideration, RE 63, Page ID # 4866; Plaintiff's Reply, RE 64, Page ID # 4873. The District Court refused suggesting contrary to Sixth Circuit precedent above that waiver *might* be considered a jurisdictional issue.  Second Trial Court Opinion, RE 65, Page ID # 4886 (citing *Fort Bend Cty., Tex.*, 139 S. Ct. 915).[11]

---

[11]On June 3, 2019, the Supreme Court decided in keeping with this Court's precedent that Title VII's administrative exhaustion requirement is not jurisdictional and is subject to waiver.  *Fort Bend County v. Davis*, 139 S. Ct. 1843 (2019).

The District Court's decision was based on the retroactive application of a hypothetical future precedent. While legal precedent may be applied retroactively to pending cases (*see Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758-9 (1995)), there is no authority that would permit the application of *speculative* precedent. The Supreme Court cautioned that existing precedent must be applied and that speculative prospective application should be avoided. *See United States v. Marine Bancorporation, Inc.*, 418 U.S. 602, 622 (1974) (Court rejected government's position in an antitrust appeal as speculative and not consistent with then-existing precedent). By speculating that the Supreme Court might find exhaustion to be a jurisdictional issue, the District Court ignored this Court's existing precedent requiring reversal. *See Bryan v. United States*, 721 F.2d 572, 576 (6th Cir. 1983) ("we are bound by existing precedent"); *United States v. Campbell*, 482 Fed.Appx. 997, 997-8 (6th Cir. 2012).

# VI.  CONCLUSION

Based on the foregoing, George respectfully requests this Court to reverse the judgment of the District Court and to remand the case with instructions to permit George to present his retaliation and discrimination claims to a jury.

Respectfully Submitted,

LIEBER HAMMER HUBER & PAUL, P.C.


s/James B. Lieber
James B. Lieber
PA I.D. No. 21748
Thomas M. Huber
PA I.D. No. 83053
5528 Walnut Street
(412) 687-2231 (tel.)
(412) 687-3140 (fax)
Counsel for Appellant

## <u>CERTIFICATE OF COMPLIANCE (WORD COUNT)</u>

The foregoing Brief submitted by Appellant John George was prepared on a computer using a Corel WordPerfect X5 word processing program and complies with the typeface-style-volume limitation because a proportionally spaced typeface was used, as follows:

| | |
|---|---|
| Name of typeface: | <u>Times New Roman</u> |
| Point size: | <u>14</u> |
| Line spacing: | <u>Double</u> |

The total number of words in the Brief, inclusive of point headings and footnotes and exclusive of pages containing the table of contents, table of citations, certification of compliance, certification of services or any authorized addendum containing statutes, rules, regulations, etc., is 12,901 words.

<u>s/James B. Lieber</u>
James B. Lieber
Counsel for Appellant John George

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a copy of the foregoing Appellant's Primary Brief was

served on the following via the CM/ECF system:

> Drew C. Piersall, Esq.
> Scott H. DeHart, Esq.
> Zashin & Rich Co., L.P.A.
> 17 South High Street, Suite 900
> Columbus, OH 43215
> tel: (614) 224-4411
> fax: (614) 2244433
>
> Counsel for Appellees

Date: September 4, 2019                 s/James B. Lieber
                                        James B. Lieber
                                        Counsel for Appellant John George

## ADDENDUM
## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| Record Entry Number | Range of Page I.D. #s | Description of Entry |
| --- | --- | --- |
| RE 1 | 1-28 | Complaint |
| RE 10 | 85-105 | Answer to Complaint |
| RE 19 | 146-170 | Amended Complaint |
| RE 20 | 171-198 | Answer to Amended Complaint |
| RE 33 | 299-309 | Proposed Joint Stipulations as to Uncontested Facts |
| RE 45 | 3568-3609 | Defendants' Motion for Summary Judgment |
| RE 50 | 4557-4596 | Plaintiff's Response to Defendants' Motion for Summary Judgment |
| RE 50-1 | 4597-4638 | George Declaration |
| RE 50-2 | 4639-4649 | Shields Declaration |
| RE 52 | 4653-4674 | Plaintiff's Motion for Leave to File Supplemental Complaint |
| RE 55 | 4741-4757 | Defendants' Reply in Support of Summary Judgement |
| RE 56 | 4758-4770 | Defendants' Memorandum in Opposition to Motion for Leave to File an Amended Complaint |

| RE 57 | 4771-4779 | Proposed Joint Stipulation as to Facts at Trial |
|---|---|---|
| RE 58 | 4780-4785 | Defendants' Supplemental Memorandum in Opposition to Plaintiff's Motion for Leave to File Supplemental Complaint |
| RE 59 | 4796-4822 | District Court Memorandum Opinion and Order |
| RE 60 | 4823 | District Court Judgment |
| RE 62 | 4840-4855 | Plaintiff's Motion for Reconsideration |
| RE 63 | 4856-4870 | Defendants' Memorandum in Opposition to Motion for Reconsideration |
| RE 64 | 4871-4880 | Plaintiff's Reply in Support of Motion for Reconsideration |
| RE 65 | 4881-4889 | Memorandum of Law and Order (Re: Motion for Reconsideration) |
| RE 66 | 4890-4891 | Notice of Appeal |
| RE 16 | 120-124 | Case Management Plan |
| RE 17 | 125-135 | Civil Trial Order |
| RE 31 | 292-294 | Unopposed Motion for Extension of Time to File Dispositive Motions |

| RE 33 | 299-309 | Joint Stipulations |
|---|---|---|
| RE 34 | 310-311 | Defendants' Notice of Filing Depositions |
| RE 35 | 312-678 | Abraham Deposition |
| RE 36 | 875-1097 | Carlson Deposition |
| RE 37 | 1269-1690 | George Deposition |
| RE 38 | 1870-2090 | Goldthwait Deposition |
| RE 39 | 2222-2357 | Lamb Deposition |
| RE 40 | 2525-2691 | Marie Deposition |
| RE 41 | 2769-2826 | Pollack Deposition |
| RE 42 | 2874-3001 | Sturrus Deposition |
| RE 43 | 3134-3283 | Wakefield Deposition |
| RE 44 | 3395-3510 | Zapka Deposition |
| RE 45-2 | 3612-3615 | Hripko Declaration |
| RE 46 | 3661-3663 | Unopposed Motion for Extension of Time to File Response to Motion for Summary Judgment |
| RE 47 | 3665-3668 | Joint Motion for Extension of Pretrial Conference |
| RE 48 (inc. RE 48-1 though RE 48-36) | 3669-4146 | Plaintiff's Notice of Filing Numbered Exhibits (with Numbered Exhibits) |
| RE 49 | 4147-4149 | Plaintiff's Notice of Filing Depositions |
| RE 49-1 | 4150-4228 | Abraham Deposition |
| RE 49-2 | 4229-4276 | Carlson Deposition |

| RE 49-3 | 4277-4363 | George Deposition |
|---------|-----------|-------------------|
| RE 49-4 | 4364-4410 | Goldthwait Deposition |
| RE 49-5 | 4411-4439 | Lamb Deposition |
| RE 49-6 | 4440-4451 | Pollock Deposition |
| RE 49-7 | 4452-4473 | Steelant Deposition |
| RE 49-8 | 4474-4500 | Sturrus Deposition |
| RE 49-9 | 4501-4532 | Wakefield Deposition |
| RE 49-10 | 4533-4556 | Zapka Deposition |
| RE 51 | 4650-4652 | Unopposed Motion for Extension of Time to File Reply in Support of Dispositive Motion |
| RE 53 | 4753 | Order Granting Extension |
| RE 54 | 4736-4740 | Defendants' Motion to Excuse Attendance of Individual Defendants at Final Pretrial Conference |